# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BILLSON YAW KETTEY, <br><br> Plaintiff, <br><br> v. <br><br> SAUDI MINISTRY OF EDUCATION, *et al.*, <br><br> Defendants. | Civil Action No. 13-745 (CKK) |

## MEMORANDUM OPINION
(June 27, 2014)

Plaintiff, who is proceeding *pro se*, filed suit against the Saudi Ministry of Education, the Saudi Ministry of Higher Education, and Taif University of Saudi Arabia (collectively, "Defendants"), asserting breach of contract, quantum meruit, and fraud arising out of Plaintiff's employment as an English teacher at Taif University. Presently before the Court is Defendants' [8] Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Plaintiff's Complaint must be dismissed for failure to serve Defendants. Moreover, the Court finds that Defendants are immune from suit under the Foreign Sovereign Immunities Act as to Plaintiff's breach of contract and quantum meruit claims. Accordingly, those claims must be dismissed with prejudice for lack of subject matter jurisdiction. While Defendants are not immune from Plaintiff's fraud claim, that claim must also be dismissed with prejudice because Plaintiff failed to sufficiently plead fraud. Accordingly, Defendants' Motion is GRANTED.

---

[1] Defendants' Motion to Dismiss ("Def.s' Mot."), ECF No. [8]; Plaintiff's Opposition ("Pl.'s Opp'n."), ECF No. [16].

# I. BACKGROUND

For the purposes of Defendants' Motion to Dismiss, the Court presumes the following facts pled in Plaintiff's Complaint to be true, as required when considering a motion to dismiss. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). On or about August 23, 2004, Billson Yaw Kettey ("Plaintiff") was interviewed by Dr. Ahmed Mofareh, an employee of the Saudi Arabian Ministry of Education ("MOE"), in Washington, D.C. for a position teaching English in Saudi Arabia. Compl. ¶ 10. Plaintiff alleges that, after the interview, Dr. Mofareh "made Plaintiff believe that he was being offered an offer for employment with all the entitlements and privileges that applied to American English instructors of the same qualifications as Master's degree holders contracted by the Saudi Ministry of Education." *Id.* In other words, Plaintiff believed that he would receive a "country of origin" benefit and "that his salary would be fixed to the reasonable amount paid to Westerners in the same teaching position." *Id.* ¶¶ 16, 29.

Following the interview, Plaintiff entered into a one-year contract dated August 23, 2004, for employment with the Teachers Colleges of the MOE in Saudi Arabia (the "Contract"). *Id*. ¶ 11, Ex. A (the Contract). Plaintiff does not allege in his Complaint where the Contract was signed, but the Court shall draw the reasonable inference that the Contract was signed in the United States since it was signed the same day as Plaintiff's interview in Washington, D.C. Under the Contract, Plaintiff was to be paid a 8,370 Saudi Rials ("S.R.") salary plus an annual 17,000 S.R. housing stipend by the MOE, sixty days prepaid vacation, return air tickets to the United States for himself and his family, and various other benefits. *Id*. Ex. A (the Contract). In 2008, Plaintiff was transferred from Taif Teachers' College to the English Department of Taif University. *Id*. ¶ 13.

On May 22, 2013, Plaintiff filed suit against the MOE, the Saudi Arabian Ministry of Higher Education ("MOHE"), and Taif University, alleging breach of contract, quantum meruit, and fraud. *Id.* ¶ 1. Plaintiff alleges that Defendants breached the Contract by failing and refusing to pay him in full for labor, services, and materials he furnished while in Defendants' employ. *Id.* ¶ 21. Specifically, Plaintiff alleges that Defendants refused to pay him $319,000 for his "country of origin benefit" and approximately $3,000 for twenty-eight hours over-time and his extra work supervising student-teachers for the 2008-2009 academic year. *Id.* ¶ 17. Second, Plaintiff alleges quantum meruit, claiming Defendants benefitted from his labor, but failed and refused to pay him for such benefits. *Id.* ¶¶ 25-26. Finally, Plaintiff alleges fraud, claiming that Defendants made written and oral statements regarding Plaintiff's salary with an intent to deceive Plaintiff "into believing that his salary would be fixed to the reasonable amount paid to Westerners in the same teaching position." *Id.* ¶ 29.

On July 24, 2013, the Court issued an Order to Plaintiff advising Plaintiff that he was required to serve the MOE and the MOHE pursuant to the procedures set forth in 28 U.S.C. § 1608(a). Order (July 24, 2013), ECF No. [3]. The Court also indicated that Plaintiff was required to serve Taif University pursuant to 28 U.S.C. § 1608(b). *Id.* The Court ordered Plaintiff to submit the necessary documents to the Clerk of the Court for mailing by no later than August 23, 2013. *Id.* The Clerk of the Court mailed the documents provided by Plaintiff on August 20, 2013. *See* ECF No. [5]. On September 23, 2013, the Court ordered that by no later than October 15, 2013, Plaintiff must file proof of service with the Court, or request service of all Defendants pursuant to 28 U.S.C. § 1608(a)(4), otherwise the case would be dismissed without prejudice for want of prosecution. Order (Sept. 23, 2013), ECF No. [6]. On October 4, 2013, Plaintiff filed an Affidavit of Service. ECF No. [7].

On October 25, 2013, Defendants filed a Motion to Dismiss. Defendants contend that (1) the Court does not have jurisdiction over this matter because Defendants have not received service; (2) the Court does not have jurisdiction because Defendants are immune under the Foreign Sovereign Immunities Act ("FSIA"); (3) Plaintiff's claims are barred by the applicable statutes of limitations; and (4) Plaintiff failed to state a claim on which relief can be granted. On December 18, 2013, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss. As the time in which Defendants were entitled to file a Reply has now passed and no extension has been requested, Defendants' Motion is now ripe for review.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1). In so doing, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d. 84, 90 (D.D.C. 2000). Furthermore, a court need not accept inferences drawn by the plaintiff if those inferences are not supported by the facts alleged in the complaint. *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 22 (D.D.C. 2013) (citing *Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002)).

### B. Federal Rule of Civil Procedure 12(b)(4)

Federal Rule of Civil Procedure 12(b)(4) provides that a Court may dismiss a case due to "insufficiency of process" if the plaintiff fails to establish that he or she has properly effected service upon the defendant(s) pursuant to Federal Rule of Civil Procedure 4. *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* (quoting C. Wright & A. Miller, *Federal Practice & Procedure* § 1083, at 334 (1969)); *see also Hilska v. Jones,* 217 F.R.D. 16, 20 (D.D.C. 2003) (holding that "the plaintiff carries the burden of establishing that he has properly effected service") (citation omitted).

### C. Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curium). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly, 550 U.S..* at 555. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

5

doubtful in fact)." *Id*. (citations omitted).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must "construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Empl. Benefit Plans Litig.,* 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). In addition where, as here, an action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Richardson v. United States,* 193 F.3d 545, 548 (D.C. Cir. 1999). When considering *pro se* complaints, courts may "consider supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged." *Greenhill v. Spellings,* 482 F.3d 569, 572 (D.C. Cir. 2007) (citing *Anyanwutaku v. Moore,* 151 F.3d 1053, 1054 (D.C. Cir. 1998)). "Nonetheless, [a] *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy,* 29 F.3d 682, 684 (D.C. Cir. 1994) (quoting *Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### III. DISCUSSION

#### A. Failure to Serve Defendants

Defendants first argue that this Court does not have jurisdiction over Defendants because they have not been served in accordance with 28 U.S.C. § 1608. Federal Rule of Civil Procedure 4(j)(1) provides that "a foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Subsection (a) of § 1608 provides for service

6

on foreign states or political subdivisions of a foreign state and subsection (b) provides for service on an agency or instrumentality of a foreign state. As political subdivisions of a foreign state, the MOE and the MOHE should have been served in accordance with § 1608(a). As an instrumentality of a foreign state, Taif University should have been served in accordance with § 1608(b). The FSIA prescribes four methods of service, in descending order of preference. *See* §§ 1608(a)(1)-(4). "Strict adherence to the terms of 1608(a) is required." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008) (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)). The Court finds that Plaintiff failed to adhere to the requirements of § 1608.

On July 24, 2013, the Court instructed Plaintiff to send the summons, complaint, and a notice of suit, together with a translation of each into the official language of the foreign state, pursuant to §§ 1608(a)(3) and (b)(3)(B)—"by any form of mail *requiring a signed receipt*," to be addressed and dispatched by the Clerk of the Court to the Kingdom of Saudi Arabia Ministry of Foreign Affairs and to Taif University.[2] Order (July 24, 2013), at 2 (emphasis added). On August 20, 2013, the Clerk of the Court filed a certificate of service in accordance with 28 U.S.C. § 1608(a)(3) and § 1608(b)(3)(B). *See* Certificate of Mailing, ECF No. [5]. Having thereafter received no proof of service from Plaintiff, however, the Court issued an Order on September 23, 2013, instructing Plaintiff to either file proof of service with the Court or request service of all Defendants pursuant to 28 U.S.C. § 1608(a)(4) otherwise the case would be

---

[2] Plaintiff had previously attempted to serve Defendants "by means of registered mail service on May 29th, 2013 [sic], at 42nd Street branch of U.S. Post Office in New York City," but Plaintiff did not receive a return receipt, nor did Defendants appear in the case. Order (July 24, 2013), at 1. The Court noted in its July 24, 2013, Order that the FSIA does not permit Plaintiff to serve Defendants himself by registered mail and no special arrangement or international convention on service applied in this case. Consequently, the Court ordered Plaintiff to serve Defendants pursuant to 28 U.S.C. § 1608(a)(3).

dismissed for want of prosecution. *See* Order (Sept. 23, 2013), at 2.

On October 4, 2013, Plaintiff filed an affidavit of service in which he stated that he "submitted the summons/complaints/notice of suit together with a translation of each into the official language of the foreign state . . . pursuant to 28 U.S.C. § 1608(a)(3) . . . and 28 U.S.C. § 1608(b)(3)(B)." *See* Affidavit of Service, ECF No. [7]. Along with his affidavit of service, Plaintiff provided copies of the Express Mail address forms completed for each of the three Defendants, as well as copies of the United States Postal Service Tracking Information for the service packages sent to the MOHE and Taif University. *Id*. Plaintiff did not provide any sort of tracking information for the MOE, nor did he provide signed return receipts for any of the three Defendants. However, §§ 1608(a)(3) and (b)(3)(B) mandate service "by any form of mail requiring a signed receipt." This requirement presumes that a receipt will be signed. *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 68 (D.D.C. 2007) (citing § 1608(c)(2) which provides that service is deemed to have been made "as of the date of receipt indicated in the certification, *signed and returned postal receipt*, or other proof of service applicable to the method of service employed" (emphasis added)). In addition to not providing signed return receipts from any of the three Defendants, Plaintiff concedes in his Opposition that "the package for the Ministry of Education was returned with the excuse that the recipient was not specified." Pl.'s Opp'n. at 2. As a result, Plaintiff has not shown that he has fulfilled even "the core function of service [—] to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Nibkin*, 471 F.Supp.2d at 68 (quoting *Henderson v. United States*, 517 U.S. 654, 672 (1996)). The facts of this case are similar to *Nikbin* where the district court held that service had not been effected pursuant to § 1608 when the plaintiff did not provide the court with the

defendant's signed receipt of service and there was evidence that the service package was simply left in the mail room of the Ministry of Foreign Affairs. *Id.* Likewise, here, the Court finds that Plaintiff has failed to show, through proof of signed receipts of service from Defendants, that he effected service on any of the three Defendants. *See Hilska*, 217 F.R.D. at 20 (D.D.C. 2003) (holding that "the plaintiff carries the burden of establishing that he has properly effected service") (citation omitted). Accordingly, the Court GRANTS Defendants' Motion to Dismiss for failure to serve. However, as the Court also finds, for the reasons explained below, that it lacks jurisdiction under the FSIA to hear Plaintiff's breach of contract and quantum meruit claims and that Plaintiff fails to state a claim for fraud, the Court shall dismiss *with prejudice* all of Plaintiff's claims.

### B. Foreign Sovereign Immunities Act

Defendants next argue that the Court does not have jurisdiction over this matter because all three Defendants are immune from suit pursuant to the Foreign Sovereign Immunities Act ("FSIA") of 1976, 28 U.S.C. § 1602 *et seq*. The FSIA grants foreign states immunity from the jurisdiction of federal and state courts. The FSIA defines the term "foreign state" to include a state's political subdivisions, agencies, and instrumentalities. 28 U.S.C. § 1603(a). The FSIA is the sole basis for obtaining jurisdiction over a foreign state, state agency, or state instrumentality in the courts of the United States and it is not a generous statute. *Odhiambo*, 930 F. Supp. 2d at 23 (quoting *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005)); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, foreign states are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Defendants argue—and Plaintiff does not dispute—that the Ministry

of Education and the Ministry of Higher Education are state political subdivisions and Taif University is a state instrumentality and thus all Defendants are covered by the FSIA.

i. **Statutory Framework**

The plaintiff bears the burden of producing evidence to show that the foreign sovereign defendant does not have immunity because one of the exceptions to the FSIA grants the federal court subject matter jurisdiction over the plaintiff's claims. *Youming Jin v. Ministry of State Sec.*, 475 F. Supp. 2d 54, 61 (D.D.C. 2007) (citing 28 U.S.C. § 1602; *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000)). In challenging a court's subject matter jurisdiction under the FSIA, the burden shifts to the defendant to prove that "the plaintiff's allegations do not bring the case within one of the statutory exceptions to immunity." *Id.*; *see also Heroth v. Kingdom of Saudi Arabia*, 565 F. Supp. 2d 59, 64 (D.D.C. 2008) (citing *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1171 (D.C. Cir. 1994)), *aff'd*, 331 Fed. Appx. 1 (D.C. Cir. 2009). "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Heroth*, 565 F. Supp. 2d at 64 (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). A court may dismiss a complaint brought under FSIA only if "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Youming Jin*, 475 F. Supp. 2d at 61 (citations omitted).

Exceptions to the immunity granted by the FSIA are listed in 28 U.S.C § 1605(a). Of the listed exceptions, only 28 U.S.C. § 1605(a)(2), (the "commercial activity exception"), could

apply to this case.³ Under the commercial activity exception, a foreign state is not immune from the jurisdiction of courts of the United States "in any case…in which the action is based (1) upon a commercial activity carried on in the United States by the foreign state; (2) or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; (3) or upon an act outside of the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

First, in order to have subject matter jurisdiction under clause one, the Court must find that the plaintiff's action is "based upon" a "commercial activity" by defendants that had "substantial contact" with the United States. *See Nelson*, 507 U.S. at 356; 28 U.S.C. § 1605(a)(2). "Based upon" is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id*. at 357. The term "elements" as used in *Nelson* is interpreted to indicate that "so long as the alleged commercial activity establishes a fact without which the plaintiff will lose, the commercial activity exception applies." *Odhiambo*, 930 F. Supp. 2d at 27 (citing *Kirkham v. Société Air Fr.*, 429 F.3d 288, 292 (D.C. Cir. 2005) (clarifying that the term "elements" should be read as "referring to *each fact necessary* to establish a claim") (emphasis in original)). "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). This has been interpreted to mean that "when a foreign government acts, not as regulator of a market, but in the manner of a private player with in it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Republic of Argentina v. Weltover,*

---

³ Plaintiff pled a fraud claim that is commercial in nature, and is therefore subject to 28 U.S.C. §1605(a)(2), rather than the noncommercial tort exception to immunity under the FSIA listed in 28 U.S.C. § 1605(a)(5).

*Inc.*, 504 U.S. 607, 614 (1992). Contracts for services are generally considered commercial activities when entered into in the United States. *See, e.g., Embassy of the Fed. Rep. of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136, 141 (D.D.C. 2012) (contract for legal services); *El-Hadad v. United Arab Emirates*, 496 F. 3d 658, 663 (D.C. Cir. 2007) (employment contract).

In order to have subject matter jurisdiction under clause two, the Court must find (1) the plaintiff's action is based upon an act performed in the United States, and (2) that it was taken in connection with a commercial activity of the defendants. 28 U.S.C. § 1605(a)(2). An action qualifies as an act performed in the United States in connection with a commercial activity of the foreign state elsewhere, if "'the acts (or omissions) . . . are limited to those which *in and of themselves* are sufficient to form the basis of a cause of action.'" *Heroth*, 565 F. Supp. 2d at 67 (quoting *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (emphasis in original)).

Finally, to have subject matter jurisdiction under clause three, the Court must find that the plaintiff's action is (1) based upon an act outside the territory of the United States, (2) that was taken in connection with a commercial activity of the defendants outside of this country, and (3) that caused a direct effect in the United States. *See Weltover*, 504 U.S. at 611; 28 U.S.C. § 1605(a)(2). The "direct effect" of a commercial activity in the United States must be "nontrivial, although the effect does not have to be substantial or foreseeable." *Youming Jin*, 475 F. Supp. 2d at 63 (citing *Weltover*, 504 U.S. at 617-618). "An effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'" *Weltover*, 504 U.S. at 618 (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2nd Cir. 1991)). "In determining where the effect is directly felt, courts look to the place where legally significant acts giving rise to the claim occurred rather than to where merely incidental or eventual effects are felt." *Youming Jin*, 475 F.

Supp. 2d at 63 (citing *Zedan*, 849 F.2d at 1515).

### ii. Lack of Jurisdiction under FSIA over Plaintiff's breach of contract and quantum meruit claims.

As all actions upon which Plaintiff bases his breach of contract and quantum meruit claims occurred in Saudi Arabia and the actions cannot be said to have had a direct effect on the United States, Defendants are immune from suit under the FSIA and the Court lacks jurisdiction to hear these claims. Although Plaintiff was interviewed in the United States and signed his contract in the United States, the elements of Plaintiff's breach of contract and quantum meruit claims that would entitle him to relief are his performance and Defendants' non-payment, both of which occurred in Saudi Arabia. *See Lempert v. Republic of Kazakstan, Ministry of Justice*, 223 F. Supp. 2d 200, 203 (D.D.C. 2002), *aff'd*, 62 Fed.Appx. 355 (D.C. Cir. 2003), *cert. denied.* 540 U.S. 1048 (2003) (finding that although the parties negotiated over contract terms while plaintiff was in the United States, the court lacked jurisdiction over breach of contract and unjust enrichment claims because "the elements of [plaintiff's] claim that would entitle him to relief [were] his performance and [defendant's] non-payment, both of which were in Kazakstan. The preliminary negotiations between the parties and solicitation of the plaintiff's services were not the 'commercial activity' upon which the claim is based."); *In re Papandreou*, 139 F.3d 247, 253 n.3 (D.C. Cir. 1998) ("Certainly we do not suggest that a breach of contract action could be 'based upon' the solicitation, or that the U.S. solicitation *constituted* the commercial activity on which the suit is based." (emphasis in original)). Consequently, Plaintiff's claims satisfy neither clause one or two of the commercial activity exception to FSIA immunity because Plaintiff's claims were not based upon commercial activity or acts which occurred in the United States.

Plaintiff's breach of contract and quantum meruit claims also do not satisfy the third

clause of the commercial activity exception, which excludes a foreign state from immunity where an act occurs outside the United States but causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2). Courts have repeatedly held that a refusal to pay for services performed by an American plaintiff in and of itself usually does not meet the direct effect requirement. In *Lempert*, the court noted that "a refusal to pay may cause a direct effect if there is a contractual provision for payment to be made in or sent to the United States," but found no such effect because "there was no such contractual provision" in that case. 223 F. Supp. 2d at 204; *see also Zedan*, 849 F.2d at 1514-15 (holding that Saudi Arabia's failure to forward money to the plaintiff did not cause a direct effect in the United States because there was no assurance to send the payment to the United States); *Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1146-47 (D.C. Cir. 1994) (holding that defendant's failure to honor payment obligations did not cause a direct effect in the United States because the United States was not designated as the "place of performance" where money was "supposed" to have been paid to the plaintiff). Similarly, here, Plaintiff does not allege that there was any arrangement for payment of his salary to be made in or sent to the United States. Accordingly, the alleged refusal to pay Plaintiff does not meet the direct effect requirement and Plaintiff's claims are not exempt from immunity. The Court DISMISSES Plaintiff's breach of contract and quantum meruit claims for lack of jurisdiction.

      **iii.    FSIA Jurisdiction over Plaintiff's Fraud Claim.**

Plaintiff's fraud claim, by contrast, falls under the second clause of the commercial activity exception. Jurisdiction is found under clause two of the commercial activity exception if the action is based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). Although Plaintiff's Complaint is far from a model of clarity, construing Plaintiff's Complaint "with sufficient liberality to

afford all possible inferences favorable to the pleader on allegations of fact," *Settles v. U.S. Parole Comm'n*, 429 F. 3d. 1098, 1106 (D.C. Cir. 2005), the Court finds that Plaintiff has pled that Defendants made fraudulent representations to Plaintiff at the time Plaintiff signed the Contract in the United States. *See* Compl. ¶ 10 ("On or about August 23, 2004, Dr. Ahmed Mofareh, employee and agent of defendants interviewed Billson Yaw Kettey at 2600 Virginia Avenue, Washington, D.C. 20038 for a teaching position in Saudi Arabia. After the interview, Dr. Mofareh made Plaintiff believe that he was being offered an offer for employment with all the entitlements and privileges that applied to American English instructors of the same qualifications as Master's degree holders contracted by the Saudi Ministry of Education."); *Id.* ¶ 11 ("Billson Yaw Kettey thereafter accepted the aforementioned offer for employment" (attaching copy of contract dated August 23, 2004)); *Id.* ¶ 29 ("Defendants made written and oral statements with the intent to deceive Plaintiff into believing that his salary would be fixed to the reasonable amount paid to Westerners in the same teaching position."). Since Plaintiff's fraud claim is based upon an act performed in the United States—the signing of the Contract—in connection with a commercial activity of a foreign state—the teaching of English in Saudi Arabia by Saudi Arabian state agencies and instrumentalities—this claim is exempt from immunity pursuant to clause two of the FSIA's commercial activity exception. Accordingly, the Court has jurisdiction to hear this claim.

### C. Count III: Fraud-Intentional Misrepresentation

As Plaintiff's fraud claim is the only claim over which the Court has jurisdiction, the Court shall only evaluate Defendants' remaining arguments as they pertain to this claim. Defendants argue that the Court should dismiss Plaintiff's fraud claim because it is barred by the District of Columbia statute of limitations and because Plaintiff fails to sufficiently plead a claim of fraud.

A federal court sitting in diversity looks to state law to determine whether a cause of action based upon state law has expired. *Klayman v. Judicial Watch, Inc*., 2007 WL 1034936, at *3 (D.D.C. Apr. 3, 2007) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)); *A.I. Trade Finance, Inc. v. Petra Intern. Banking Corp*., 62 F.3d 1454, 1458 (D.C. Cir. 1995). District of Columbia choice-of-law rules treat statutes of limitations as procedural, and therefore almost always mandate use of the District of Columbia's statute of limitations. *Id.* The District of Columbia statute of limitations on fraud claims is three years. D.C. CODE ANN. § 12-301(8) (2012). The general rule in the District is that "a cause of action accrues for limitations purposes 'when the plaintiff has either actual notice of [his] cause of action or is deemed to be on inquiry notice because if [he] had met [his] duty to act reasonably under the circumstances in investigating matters affecting [his] affairs, such an investigation, if conducted, would have led to actual notice.'" *Harris v. Ladner*, 828 A.2d 203, 205-206 (D.C. 2003) (quoting *Diamond v. Davis*, 680 A. 2d 364, 372 (D.C. 1996)). The discovery rule can, in certain circumstances, toll the statute of limitations, but "it is well established that 'general knowledge that [a defendant's conduct] was wrongful,' rather than knowledge of the 'precise legal remedies for [that wrongful conduct],' is the focus of this discovery rule." *Bakeir v. Capital City Mortg. Corp*., 926 F. Supp. 2d 320, 334 (D.D.C. 2013) (quoting *Drake v. McNair*, 993 A.2d 607, 617-618 (D.C. 2010)). In cases of inquiry notice, "the relevant determination is 'whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to [her].'" *Id.* at 334-335 (quoting *Drake*, 993 A.2d at 617) (citation and quotation marks omitted)). "'[S]uspicions' that something is amiss 'place [ ] upon [a plaintiff] the obligation to move promptly and with reasonable diligence to inquire further into the matter." *Id*. at 335 (quoting In re Estate of Delaney, 819 A.2d 968, 982 (D.C. 2003)).

The Court should grant a motion to dismiss based on statute of limitations concerns "only if the complaint on its face is conclusively time barred." *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 31 (D.D.C. 2007) (citation omitted). "The complaint is construed liberally in the plaintiff's favor, and the plaintiff is given the benefit of all inferences that can be derived from the facts alleged. *Id.* (citing *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Accordingly, "if 'no reasonable person could disagree on the date' on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds." *Id.* at 32 (citing *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (internal citation omitted)). Plaintiff's Complaint does not show, on its face, that his fraud claim is conclusively time barred. Plaintiff alleges that, in the process of resolving issues relating to an annual raise that he claims he was denied, he "stumbled upon conclusive information or evidence" that he had not received "all the entitlements, conditions and privileges" as offered to other American and Western teachers with his qualifications. *See* Pl.'s Opp'n. at 3. Such information would have put Plaintiff on inquiry notice of his fraud claim. Plaintiff does not allege, however, the date or specific time period in which he stumbled upon this information, but only states that it occurred "during the course" of his investigation into his annual raise, a period which the Court gleans from Plaintiff's Opposition began as early as 2009 and lasted until 2012. *See* Compl. ¶ 16; Pl.'s Opp'n. at 2-3. If Plaintiff was put on notice of the alleged fraud before May 21, 2010, his claim would be barred by the statute of limitations; if he only became aware that something was amiss after May 2010, his claim would not be barred. As the facts alleged by Plaintiff could reasonably place his claim within the statute of limitations, the Court shall not dismiss Plaintiff's fraud claim on this basis.

The Court does find, however, that Plaintiff's fraud claim must be dismissed for failure to

state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require that fraud be pled with particularity. Fed. R. Civ. P. 9(b). The circumstances that a plaintiff must plead with particularity "include matters such as the time, place and content of the false misrepresentations; the misrepresented fact; and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 77 (D.D.C. 2008) (citations omitted). "In other words, Rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." *Id*.

Here, Plaintiff broadly alleges that Defendants made fraudulent "written and oral statements with the intent to deceive Plaintiff into believing that his salary would be fixed to the reasonable amount paid to Westerners in the same teaching position." Compl. ¶ 29. However, Plaintiff does not make any allegations about the specific content of the false misrepresentations as required by the heightened pleading standard for fraud. Plaintiff does attach to his Complaint the Contract he signed with the MOE and Article 45 of the guidelines and principles of Saudi employment.[4] *See* Compl. Exs. A, B. Article 45 states: "The board of trustees *may* increase the salaries fixed in the payroll by not more than 100% of the basic salary for those who are contracted in Europe, America or any other advanced country of a similar standard." Compl. Ex. B (emphasis added). This statement, however, is insufficient to establish a claim of fraud by Defendants. First, this statement can only be attributed to the party actually contracting with Plaintiff—the MOE—not the MOHE or Taif University. Since this specific statement cannot be

---

[4] The nature of Article 45 is not entirely clear to the Court and the parties do not provide any explanation as to Article 45's import or indicate whether Article 45 was presented to Plaintiff at the time he signed the Contract and/or whether Article 45 was attached to the Contract. The Court has conducted a generous reading of Plaintiff's Complaint, and assumes that Article 45 was presented to Plaintiff when he signed the Contract—the moment he alleges the fraud occurred.

18

attributed to the MOHE or Taif University and Plaintiff has failed to point to any other specific fraudulent representation by the MOHE or Taif University, the Court finds that Plaintiff has not sufficiently plead a claim of fraud as to the MOHE or Taif University.  As to the MOE, this statement is insufficient to allege fraud because it cannot constitute a false misrepresentation. The use of the word "may" rather than "shall" in the statement indicates that the MOE would provide the "country of origin benefit" at its discretion. *See Group Hospitalization & Medical Services, Inc. v. Stubbs*, No. 90-823, 1990 WL 183576, at *2 (D.D.C. Nov. 16, 1990) (holding that the parties' use of the permissive "may" instead of "shall" indicates that they did not intend to be forced into arbitration); *Bennett v. Panama Canal Co.*, 475 F.2d 1280, 1282 (D.C. Cir. 1973) ("Ordinarily 'may' is a permissive not a mandatory term."); *Emory v. Secretary of the Navy,* 708 F.Supp. 1335, 1338 (D.D.C.) ("'shall' denotes a mandatory action when used in statutes and contracts"), *aff'd mem.,* 1989 WL 201552 (D.C. Cir. 1989).  Such a permissive statement allowing Defendant the option to give Plaintiff a "country of origin benefit" cannot be considered the deceptive promise that Plaintiff alleges he was given, since it is not a promise at all.  Given the permissive nature of the "country of origin benefit," the Court finds that Plaintiff has not sufficiently alleged fraud as to the MOE because he has not sufficiently alleged that a misrepresentation was made.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Complaint must be dismissed for failure to properly serve Defendants.  However, because the Court also finds that Defendants are immune under the FSIA from suit on Plaintiff's breach of contract and quantum meruit claims, these claims must be DISMISSED WITH PREJUDICE.  Likewise, as the Court finds that Plaintiff has failed to sufficiently plead a fraud claim, this claim is DISMISSED WITH

19

PREJUDICE.

An appropriate Order accompanies this Memorandum Opinion.

>             /s/
> **COLLEEN KOLLAR-KOTELLY**
> UNITED STATES DISTRICT JUDGE